## Weaver License

*Fierro, Campana, Campana & Miele,* for appellant.
*Wood, Stuart & Murphy,* for Commonwealth.

WILLIAMS, P. J., December 15, 1961.—In an earlier opinion we sustained the appeal of E. Randolph Weaver from the suspension of his driving privileges by the Department of Revenue. The attorney general's office by letter dated November 28, 1961, asks us to review this decision because of a recent case in the Superior Court, Hall Motor Vehicle Operator License Case, 196 Pa. Superior Ct. 346. Because of this letter from the attorney general's office, we have again reviewed the matter and file this supplementary opinion . . .

In our recent opinion in Commonwealth v. Sleeper, 8 Lyc. 47, we discussed the various opinions as to suspensions that have been recently handed down by the

Superior Court of Pennsylvania, which court is now the court of last resort insofar as motor violation suspension appeals are concerned. Several years ago, the Supreme Court heard these appeals and in our previous opinions in this county we have consistently followed what we believed to be the rulings of the Supreme Court, including Commonwealth v. Emerick, 373 Pa. 388.

In all of the Superior Court cases including the last one that we have had notice of, to-wit: Hall Motor Vehicle Operator License Case, supra, we can find nothing which seems to change the broad fundamental rights and duties of a common pleas court in an appeal such as the instant one as pronounced in Commonwealth v. Emerick and the other Supreme Court cases. The attorney general's office seems to take a different view.

In Commonwealth v. Emerick, it was expressed that the power conferred by The Vehicle Code upon the Secretary of Revenue is an administrative and not a judicial function. It was also expressed that The Vehicle Code gives the right of appeal from the secretary's suspension of the operator's license to the court of common pleas, and that this court should begin the "case anew" and determine as to whether or not the motorist has violated the code, then the court is to exercise its discretion as to whether or not a suspension should be decreed. The court stated that " ... if the testimony so taken de novo is undisputed, but there are submitted to him extenuating facts and circumstances, such as, inter alia inadvertence, emergency, unintentional or accidental violations, including, among other reasons, economic hardship, if adequately supported by the testimony, the exercising by the hearing judge's discretion will not be disturbed."

In the past we have had a number of cases in which we have followed the pronouncements of the Emerick

and other Supreme Court cases. In one intance, there was a father who was rushing his two polio stricken children to the Williamsport Hospital at 2 o'clock in the morning. He was going 65 miles an hour on a three lane highway. His license was suspended. We reversed the department. At other times when the speed limit was exceeded inadvertently in a small degree and when the violators have had good driving records we have held differently than the department, always recognizing that economic hardship alone is not sufficient.

The Commonwealth now contends that this recent Superior Court case of Hall Motor Vehicle Operator License Case, supra, changes the law. With this we cannot agree as in the Hall case, the hearing judge did not recognize the recent rulings as to out-of-State violations, and went into a complete hearing as to whether or not the motor licensee was guilty of the offense charged. In the instant case, we are accepting the certificate from New Jersey as conclusive evidence that Weaver was traveling 59 miles an hour, ruling under the directive of subsection E of section 618 of The Vehicle Code of April 29, 1959, P. L. 58. Subsection E is to the effect that the secretary is authorized after a hearing to suspend the operator's license upon receiving notice from another State of the conviction of such person of an offense therein which, if committed in this Commonwealth, would be grounds for the suspension or the revocation of the license of an operator.

We realize that the legislators in enacting subsection E took from the court in a case such as the instant one, the determination as to whether or not the motorist was guilty of the violation. In so doing they left Pennsylvanians at the mercy of every district "cop" and justice of the peace from Pennsylvania to Florida, plus the rigid rulings of the Bureau of Motor Vehicles, in a matter that concerns the motorists' livelihood.

We are of the opinion, however, that they didn't in-

tend to take from the courts that discretion as to whether or not there should be a suspension under the rules as outlined in the Emerick case, nor are we of the opinion that the Superior Court so ruled. If it was the intention of the Superior Court to change the law as suggested by the attorney general's office, then the Superior Court should have spelled out in no uncertain terms just what the duty of the common pleas court is. If the only duty of a common pleas court is to determine as to whether or not a violation occurred, then hearings by the court are useless, time consuming and expensive. Certainly if one is guilty of a violation when a letter from Georgia showing conviction is sent to the Department of Revenue, and the Department of Revenue is authorized to suspend on the basis of this letter, and no appeal is allowed from the findings of this letter, there is no other reason for a hearing before the court than to determine if the suspension itself was proper.

The right of appeal by the court continues to be written into the Act and in the same language. Justice Allen M. Stearne in writing Commonwealth v. Emerick stated, "The Commonwealth again contends, as it unsuccessfully has previously done, that this statutory provision restricts the power of the Court of Common Pleas to the narrow inquiry whether or not the licensee violated the Code, and if so, the suspension of the Secretary must be sustained. . . " The Commonwealth continues to contend as it did in 1953.

In the instant case, as we said previously, the violation occurred on a four lane highway with a 30 foot grass divider between two 2 lane highways. The violation occurred in a rural district at a time when traffic was light. There was no evidence of recklessness. Appellant is a bus driver with three children, and his operating privileges are necessary for his livelihood. There was no testimony that his rate of speed was

more than 59 miles an hour at any other instant than the instant he was clocked by radar. We are of the opinion that his speed was inadvertent, was without recklessness, that his economic situation would be impaired without a license. It has been held that a speed of 55 miles an hour is a technical violation: Handwerk Automobile License Case, 348 Pa. 263. We feel his license should not have been suspended.

### Conclusions of Law

The court makes the following conclusions of law.

1. It is concluded that the fact of speeding in this case was inadvertent and that the Secretary of Revenue should not have suspended the driving privileges of E. Randolph Weaver.

### Order

And now, December 15, 1961, the court hereby reaffirms the order of October 4, 1961, in which the appeal was suspended, and it is ordered and decreed that the Secretary of Revenue reinstate the license of E. Randolph Weaver.